**Linda MEEKER, Plaintiff,**

v.

**REGIONAL SCHOOL DISTRICT # 6, et al., Defendants.**

**Civ. No. 3:97CV1244 (JBA).**

United States District Court,
D. Connecticut.

Sept. 29, 1998.

Bernard Pitterman, Guendelsberger & Taylor, New Milford, CT, for Plaintiff.

Frederick L. Dorsey, John M. Simon, Siegel, O'Connor, Schiff & Zangari, New Haven, CT, Thomas R. Gerarde, Michael J. Rose, Howd & Ludorf, Hartford, CT, for Defendants.

**Ruling on Motion to Dismiss [doc. # 12]**

ARTERTON, District Judge.

In 1997, plaintiff Linda Meeker's teaching contract with the defendant school district was not renewed on the basis of inefficiency and incompetence. Meeker alleges that the charges of inefficiency and incompetence articulated by defendant Timothy Breslin at a public meeting deprived her of a constitutionally protected liberty interest. This matter is before the Court on defendants' Motion to Dismiss.

### Factual Allegations

In 1995, Meeker was hired by the defendant school district under an initial contract of employment as a fourth grade teacher for the 1995–1996 school year. At the end of the initial contract, the school district renewed

her contract to teach the fourth grade for an additional school year.

In March of 1997, defendant Breslin, superintendent of Regional School District # 6, notified the plaintiff that he was recommending to the defendant Board of Education that they vote nonrenewal of the plaintiff's contract. At a public meeting a few days later, the Board of Education did vote nonrenewal of the plaintiff's teaching contract. At that meeting, Breslin "presented the following reasons for his recommendation of nonrenewal of the plaintiff's teaching contract: (a) inefficiency and incompetence and (b) other due and sufficient causes." (Compl. at ¶ 18). In May of 1997, the defendants denied Meeker's request for an opportunity for a Name-Clearing Hearing.

Ms. Meeker further alleges that the reasons given at the public meeting for the nonrenewal of her contract are false, and have damaged her reputation and have impaired her ability to obtain future employment.

### Legal Standards

■ On a motion to dismiss, the Court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint. *Finnegan v. Campeau Corp.*, 915 F.2d 824, 826 (2d Cir.1990). Further, "[i]n determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). A complaint will be dismissed only where it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### Discussion

■ Ordinarily, a decision not to reemploy, standing alone, does not deprive an employee of liberty. *See Donato v. Plainview–Old Bethpage Central School District*, 96 F.3d 623, 630 (2d Cir.1996). Rather, special aggravating circumstances are needed to implicate a liberty interest, for example, when the state fires an employee and "publicly charges that she acted dishonestly or immorally, due process guarantees the employee an opportunity to defendant her 'good name, reputation, honor or integrity.'" *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). While an employee charged with shortcomings within her own power to correct is not deprived of a liberty interest, *see Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir.1972), a government announcement that "it has fired an employee for incompetence or because she can no longer do the job is 'considerably graver' and carries more potential for future disqualification from employment than a statement that the individual performed a job poorly." 96 F.3d at 630 (quoting *O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir.1994)).

■ All governmental allegations of professional incompetence, however, do not implicate a liberty interest. "Such allegations will support a right to a name-clearing hearing only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Id.* (quoting *O'Neill*, 23 F.3d at 692–93). In sum, governmental allegations of professional incompetence, made in connection with an employee's termination will not support a cause of action for a name-clearing hearing unless the allegations go "to the very heart" of the employee's professional competence and threaten to "damage [her] professional reputation" significantly impeding her ability to "practice [her] profession." 23 F.3d at 692 (citations omitted).

In *O'Neill*, the plaintiff was a city engineer-superintendent of public works whose work had been described as "incompetent." In connection with his termination, anonymous sources in the city government also told newspapers that O'Neill "could no longer do the job." *Id.* at 691. The Second Circuit used a functional analysis in finding that the statements impugning O'Neill's competence did not go to the heart of his professional competence:

O'Neill's position as City Engineer/Superintendent of Public Works was multi-faceted. It included not only duties he performed as a licensed professional civil engineer, but also numerous administrative and supervisory functions, as well as functions involving relations with other agencies of government. The statements published in the newspapers were vague and did not specify which aspects of his job he was "incompetent" to perform; they could have meant no more than that he lacked supervisory skills, had an abrasive managerial style, or caused unnecessary friction in dealing with other public agencies.

*Id.* at 693. Thus, the Second Circuit concluded that it could not "find that these statements impugned his professional reputation as a licensed engineer or impaired his ability to find future employment within his profession." *Id.* Although the court did not decide whether or in what circumstances publicized statements to the effect that "O'Neill is an incompetent engineer," would have infringed his liberty interest, the court "safely concluded that the vague statements of unspecified 'incompetence' did not damage O'Neill's professional reputation in a manner that required a hearing." *Id.* at 693.

█ The defendants in this case assert that Ms. Meeker's allegations are no different than those rejected by the Second Circuit in *O'Neill.* The Court disagrees that on the face of the Complaint alone a dispositive analogy can be made to *O'Neill.* The Second Circuit's analysis of the impugning comments rested in large part on the multi-faceted nature of O'Neill's job—an analysis informed by a full summary judgment record. At the motion to dismiss stage, the Court has before it only the allegations in the complaint, which must be construed liberally in favor of the plaintiff. The Court recognizes that the factual allegations of the complaint are somewhat sparse, but nonetheless it is plausibly inferable from the allegations of the complaint that Mr. Breslin's statements regarding Ms. Meeker's alleged inefficiency and incompetence were addressed directly to Ms. Meeker's professional abilities. Without a fuller record regarding the nature of Ms. Meeker's position, i.e., whether it was professional or quasi-professional, and regarding the context of the comments impugning Ms. Meeker's competence, the Court cannot say that it is beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

█ In the alternative, the defendants assert that even if Ms. Meeker's liberty interest was implicated, she was nonetheless provided all the process that was due. As with defendants' first contention, the record before the Court at this time is insufficient in order to make this determination. While the defendants make various representations in their papers as to what process was provided to the plaintiff, (*see, e.g.,* Defs.' Reply Br. at 7), the Court is limited to the allegations of the complaint in making the determination of the legal sufficiency of the pleadings. It is not clear on this record what process was provided to Ms. Meeker, but it is inferable from her allegations that she was not presented with an opportunity to defend herself against the allegations made by Mr. Breslin.

### Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss [doc. # 12] is DENIED.

**IT IS SO ORDERED.**